Nathaniel A. Scaggs, Esquire (VSB # 40020)
Hill & Rainey, PLC
2425 Boulevard, Suite 9
Colonial Heights, Virginia 23834
(804) 526-8300
(804) 526-2872 (fax)
nscaggs@hillrainey.com
*Counsel for Christina N. Turner*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTIRCT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| In Re: | ) | |
| WHITNEY D. SOUTHALL | ) | Case No. 25-30824-BFK |
| | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| CHRISTINA N. TURNER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro.: |
| | ) | |
| WHITNEY D. SOUTHALL | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

### COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

COMES NOW, the Plaintiff, Christina N. Turner ("Turner"), and for her Complaint for the determination of non-dischargeability of debt against Debtor, Whitney D. Southall (hereinafter, "Southall"), respectfully states as follows:

<u>The Parties</u>

1.    Plaintiff ("Turner") is an individual residing in the County of Henrico, Virginia.

2.    Debtor, Whitney D. Southall ("Southall"), is the bankruptcy debtor in Case No.  25-30824-BFK, filed on March 4, 2025, in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division.

1

3.    Southall is a resident of the Commonwealth of Virginia, and believed to have a home

address of 1244 Kenley Square, Richmond, VA 23226, in the County of Henrico,

Virginia.

Jurisdiction and Venue

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Order of Reference from

the United States District Court for the Eastern District of Virginia dated August 15,

1984.

5.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

Factual Allegations

7.    On December 22, 2022, Turner lived with Southall at Southall's residence in

Chesterfield, Virginia as boyfriend and girlfriend.

8.    Upon information and belief, Southall was intoxicated on December 22, 2022 and

became angry with Turner.

9.    Southall stated "Die" to Turner, and then Southall struck Turner in the face with his

forehead or some other part of his body, injuring Turner, knocking Turner down and

causing her to begin crying.

10.   Southall headbutted Turner in the face.

11.   The headbutt was an intentional and unwanted touching and without legal justification,

excuse, or the consent of Turner.

12.   After headbutting Turner, and while she was crying on the ground, Southall walked away

towards the home door, then turned around, walked back to Turner, stood over Turner

while she was crying on the ground and screamed (among other things) "I Hate You", and Southall then said "you just f**ked up my world".

13. As she was crying, Turner asked "what did I do to you" to which Southall said "I hate you, I f**king hate you, I hate you, I hate you, I hate you, I hate you, I hate you, I hate you", then Southall walked inside and stated words to the effect of "I'm going to get your dog".

14. Southall then went inside the home and threw the dog crate causing the dog to become free and run outside, and then proceeded to throw the dog crate outside while yelling at Turner.

15. Southall's actions were done in or near Turner's presence.

16. Southall's actions before, during, and after the headbutt were intended to put Turner in reasonable fear of imminent physical fear of imminent physical injury.

17. Just prior to headbutting Turner, Southall shoved Turner against the car in the driveway, and just prior to that, intentionally swiped her phone out of her hand, and then picked up the phone threw it in the yard and stated words to the effect of "go get your phone mother f**ker".

18. After headbutting Turner, throwing her dog crate out of the house, and letting her dog out, Turner went to her vehicle in the street, and while Turner was in or near her vehicle Southall threw an object in the road in front of Turner's vehicle and when Turner asked why are you doing this to me, Southall stated words to the effect of "I f**king hate you", and Southall continued to yell statements such as "shut up".

19. As a result of Southall's batteries and assaults upon Turner that evening, Turner was injured and sustained damages.

3

20.    Southall acted willfully, wantonly, and with reckless disregard to the life, limb, and property of the Turner.

21.    Southall's actions were malicious, and Southall acted with actual malice toward the Turner or under circumstances amounting to a willful and wanton disregard of Turner's rights.

22.    As a result of Southall's actions, on December 22, 2022, Turner filed a Warrant in Debt in the General District Court of the County of Chesterfield seeking compensatory and punitive damages against Southall (Case No. GC24005213-00).  The Warrant in Debt and Bill of Particulars, which is attached hereto as Exhibit A & Exhibit B respectively, and its allegations are being incorporated herein, alleged, among other things, regarding the actions as outlined above in Paragraphs 9-18.

23.    On September 16, 2024, the General District Court of the County of Chesterfield entered Judgment against Southall, awarding Turner compensatory and punitive damages of forty-five thousand, four hundred and sixty-eight dollars and forty cents ($45,468.40), at a rate of 6% from December 22, 2022, plus fifty dollars ($50.00) for court costs related for the filing fees.

24.    Prior to the entry of that Judgment the General District Court of the County of Chesterfield, Southall pled guilty to, and was found guilty of Assault and Battery of a Family Member in the Circuit Court for the County of Chesterfield on June 9, 2023, regarding the actions the took against Tuner as outlined above in Paragraphs 9-18. The Circuit Court for the County of Chesterfield sentencing Order is attached as Exhibit C, and the transcript trial is attached as Exhibit D.

25.　　　Southall's debt to Turner, as described above, is nondischargeable under 11 U.S. Code §

　　　727 which excepts from a Chapter 7 discharge those debts of a kind specified in 11

　　　U.S.C. § 523(a)(6).

　　　WHEREFORE, your Plaintiff, Christina N. Turner, respectfully requests that this Court

enter an Order in her favor declaring non-dischargeable the debt of Whitney D. Southall to

Christina N. Turner in the minimum amount of $45,468.40, plus interest at 6% per annum from

December 22, 2022, until paid; plus, amounts related to the state court litigation, including costs

in the amount of $50.00; and, awarding Christina N. Turner her costs incurred in this adversary

proceeding, plus such other and further relief as this Court deems proper.


DATED:  March 26, 2025　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　CHRISTINA N. TURNER

　　　　　　　　　　　　　　　　　By /s/ Nathaniel A. Scaggs
　　　　　　　　　　　　　　　　　　　　　　　　Of Counsel


Nathaniel A. Scaggs, Esquire (VSB # 77286)
Hill & Rainey, PLC
2425 Boulevard, Suite 9
Colonial Heights, Virginia 23834
(804) 526-8300
(804) 526-2872 (fax)
Nscaggs@hillrainey.com

**WARRANT IN DEBT** (CIVIL CLAIM FOR MONEY)    VA. CODE § 16.1-79

Commonwealth of Virginia

Chesterfield ......................................... General District Court
CITY OR COUNTY

9500 Courthouse Road, Chesterfield, Virginia 23832
STREET ADDRESS OF COURT

TO ANY AUTHORIZED OFFICER: You are hereby commanded to summons the Defendant(s).

TO THE DEFENDANT(S): You are summoned to appear before this Court at the above address on
April 25, 2024 at 9:00 a.m. to answer the Plaintiff(s)' civil claim (see below)
RETURN DATE AND TIME

3/18/24
DATE ISSUED    [ ] CLERK   [X] DEPUTY CLERK   [ ] MAGISTRATE

**CLAIM:** Plaintiff(s) claim that Defendant(s) owe Plaintiff(s) a debt in the sum of

$ 50,000.00 net of any credits, with interest at 6.00 % from date of 12/22/2022 until paid,

$ 50.00 costs and $ .................... attorney's fees with the basis of this claim being

[ ] Open Account [ ] Contract [ ] Note [X] Other (EXPLAIN)
Personal injury arising from an incident on December 22, 2022.

HOMESTEAD EXEMPTION WAIVED? [ ] YES [ ] NO [X] cannot be demanded

3-6-2024
[ ] PLAINTIFF [X] PLAINTIFF'S ATTORNEY [ ] PLAINTIFF'S EMPLOYEE/AGENT

**CASE DISPOSITION**

JUDGMENT against [✓] named Defendant(s) [ ]

for $ 45,468.40 net of any credits, with interest at 6 % from date

of 12-22-22 until paid, $ 50.00 costs and $ .................... attorney's fees

[ ] and $ .................... costs for Servicemember Civil Relief Act counsel fees

HOMESTEAD EXEMPTION WAIVED? [ ] YES [ ] NO [ ] CAN NOT BE DEMANDED

[ ] JUDGMENT FOR [ ] NAMED DEFENDANT(S) [ ]

[ ] NON-SUIT [ ] DISMISSED

Defendant(s) Present: [ ] NO [✓] YES (Did Not testify) pro se

9-16-24
DATE                                    JUDGE

FORM DC-412 (FRONT) 10/22

PRIVATE PROCESS SERVICE

CASE NO. 2400 5 2 1 3

Turner, Christina N.
PLAINTIFF(S) (LAST NAME, FIRST NAME, MIDDLE INITIAL)

c/o CowanGates
ADDRESS

P.O. Box 35655, 1930 Huguenot Road

Richmond, Virginia 23235

v.

Southall, Whitney D.
DEFENDANT(S) (LAST NAME, FIRST NAME, MIDDLE INITIAL)

13503 Headwaters Place
ADDRESS

Midlothian, Virginia 23113

Posted Service

[X] See attachment for additional service addresses.

**WARRANT IN DEBT**

TO DEFENDANT: You are not required to appear; however, if you fail to appear, judgment may be entered against you. See the additional notice of the reverse about requesting a change of trial location.

[ ] To dispute this claim, you must appear on the return date to try this case.

[X] To dispute this claim, you must appear on the return date for the judge to set another date for trial.

Bill of Particulars .......... ORDERED ..... 5/16/24 DUE

Grounds of Defense .......... ORDERED ..... 6/6/24 DUE

ATTORNEY FOR PLAINTIFF(S)
W. Henry M. Jones
(804) 320-9100

ATTORNEY FOR DEFENDANT(S):

**HEARING DATE AND TIME**

April 25, 2024
at 9:00 a.m.
9/16/24 11:00 P.m. "D"

(T)

JUDGMENT PAID OR SATISFIED PURSUANT TO ATTACHED NOTICE OF SATISFACTION.

....................
DATE

....................
CLERK

**DISABILITY ACCOMMODATIONS**
for loss of hearing, vision, mobility, etc., contact the court ahead of time.

Chesterfield General District Court, the undersigned clerk or deputy clerk of the above-named court, authenticate pursuant to VA. Code § 8.01-391 (C) on this date that the document to which this authentication is affixed is a true copy of a record in the above-named court, made in the performance of my official duties.

3-20-25
Date      [ ] Clerk   [X] Deputy Clerk

**EXHBIT A**

## EXHIBT B

VIRGINIA:

IN THE GENERAL DISTRICT COURT OF CHESTERFIELD COUNTY

CHRISTINA N. TURNER,                                                                        Plaintiff,

v.                                                    Case No. GV24005213-00
                                                      Trial Date: 9/16/2024; 1:00 p.m.

WHITNEY D. SOUTHALL,                                                                 Defendant.

### BILL OF PARTICULARS

COMES NOW the Plaintiff, Christina Turner ( "Plaintiff"), by counsel, and for her Bill of

Particulars, states as follows:

1.    The Plaintiff is an individual.

2.    The Defendant, Whitney Daryl Southall ( "Defendant"), is an individual.

3.    On or about December 22, 2022, the Plaintiff and Defendant were at or about 13503

Headwaters Place, Midlothian, VA 23113.

### COUNT 1 - NEGLIGENCE

4.    The Plaintiff repleads paragraphs 1 through 3 as if stated verbatim herein.

5.    At that time and place, the Defendant failed to exercise reasonable care and due

regard for Plaintiff and accidentally struck Plaintiff in the face, injuring Plaintiff.

6.    The Defendant owed the Plaintiff a duty: to exercise reasonable care and due regard

for Plaintiff; to control his bodily movements so as not to come into contact with Plaintiff and

cause injuries. Defendant breached the aforesaid duties, injuring Plaintiff.

7.    The Defendant breached the duty of care by negligently striking Plaintiff in the

face.

8.    The Defendant acted carelessly, recklessly, and negligently in contacting Plaintiff

and injuring her.

1

9.     As a direct and proximate result of the negligence of Defendant, the Plaintiff was caused to sustain injuries, has been prevented from transacting her business, has suffered and will continue to suffer pain of body and mind; has incurred and may incur in the future medical and related expenses in an effort to be cured of said injuries; has incurred lost wages; and has been inconvenienced.

COUNT 2 – ASSAULT AND BATTERY
(Pled In the Alternative)

12     The Plaintiff repleads paragraphs 1 through 3 as if stated verbatim herein.

13     Plaintiff pleads an alternative count 2 for battery in the alternative to Count 1 for negligence.

14     Upon information and belief, the Defendant was intoxicated on December 22, 2022 and became angry with Plaintiff, his girlfriend who lived with him.

15     The Defendant stated "Die" to Plaintiff and then Defendant struck the Plaintiff in the face with his forehead or some other part of his body, injuring Plaintiff, knocking Plaintiff down and causing her to begin crying.

16     The Defendant intentionally headbutted Plaintiff in the face.

17     The headbutt was an intentional and unwanted touching and without legal justification, excuse, or the consent of Plaintiff.

18     After headbutting Plaintiff, and while she was crying on the ground, the Defendant walked away towards the home door, then turned around, walked back to Plaintiff, stood over Plaintiff while she was crying on the ground and screamed (among other things) "I Hate You", and Defendant then said "you just fucked up my world".

19      As she was crying, Plaintiff asked "what did I do to you" to which Defendant said "I hate you, I fucking hate you, I hate you, I hate you, I hate you, I hate you, I hate you, I hate you" the Defendant then walked inside and stated words to the effect of "I'm going to get your dog".

20      The Defendant then went inside the home and threw the dog crate causing the dog to become free and run outside, and then proceeded to throw the dog crate outside while yelling at Plaintiff.

21      Defendant's actions were done in or near Plaintiff's presence.

22      The Defendant's actions before, during, and after the headbutt were intended to put Plaintiff in reasonable fear of imminent physical fear of imminent physical injury.

23      Just prior to headbutting Plaintiff, Defendant shoved Plaintiff against the car in the driveway, and just prior to that, intentionally swiped her phone out of her hand, and then picked up the phone threw it in the yard and stated words to the effect of "go get your phone mother fucker".

24      After headbutting Plaintiff, throwing her dog crate out of the house, and letting her dog out, Plaintiff went to her vehicle in the street, and while Plaintiff was in or near her vehicle Defendant threw an object (that appears to be a dog crate) in the road in front of Plaintiff's vehicle and when Plaintiff asked why are you doing this to me, Defendant stated words to the effect of "I fucking hate you", and Defendant continued to yell statements such as "shut up".

25      As a result of Defendant's batteries and assaults upon Plaintiff that evening, Plaintiff was injured and sustained damages.

26      The Defendant acted willfully, wantonly, and with reckless disregard to the life, limb, and property of the Plaintiff.

27     The Defendant's actions were malicious, and Defendant acted with actual malice toward the Plaintiff or under circumstances amounting to a willful and wanton disregard of Plaintiff's rights, and accordingly, the Court should award punitive damages to the Plaintiff and against Defendant to punish the Defendant for his actions and to serve as an example to deter him and others from acting in a similar way.

20.     As a direct and proximate result of the Defendant's willful acts, the Plaintiff was caused to sustain injuries, has been prevented from transacting her business, has suffered and will continue to suffer pain of body and mind; has incurred and may incur in the future medical and related expenses in an effort to be cured of said injuries; has incurred lost wages; has been inconvenienced; had been and will continue to suffer shame, humiliation, and/or indignity.

<u>COUNT 3 – Negligence Per Se</u>
<u>(Va. Code § 18.2-57.2)</u>

20.     Plaintiff repleads and incorporates the allegations above as if set forth fully herein.

21.     The Defendant's actions as set forth herein violated Va. Code § 18.2-57.2.

22.     Defendant was negligent *per se* in his violation of Va. Code § 18.2-57.2.

23.     The Code provides: "Any person who commits an assault and battery against a family or household member is guilty of a Class 1 misdemeanor."

24.     Va. Code § 18.2-57.2 is a statute enacted for public safety.

25.     Plaintiff belongs to the class of persons that Va. Code § 18.2-57.2 was designed to protect (i.e. a family or household member).

26.     The harm that occurred to Plaintiff is the type of harm against which Va. Code § 18.2-57.2 was designed to protect.

27.     As a direct and proximate result of Defendant's violation of Va. Code § 18.2-57.2, Plaintiff was injured, has been prevented from transacting her business, has suffered and will

continue to suffer pain of body and mind; has incurred and may incur in the future medical and

related expenses in an effort to be cured of said injuries; has incurred lost wages; and has been

inconvenienced.

<u>Count 4 – Willful and Wanton Negligence</u>

28.    Plaintiff repleads and incorporates the allegations above as if set forth fully herein.

29.    Defendant's action set forth above amount to such egregious conduct as to

demonstrate a conscious disregard for the rights of others and constitutes willful and wanton

conduct.

30.    Defendant had constructive or actual consciousness that injury would result from

his behavior and actions.

31.    Defendant's actions were grossly negligent, reckless, and willful and wanton, or in

the alternative, intentional with malicious intent to cause harm to Plaintiff.

32.    Defendant's actions indicated above and elsewhere herein indicates willful and

wanton conduct demonstrating a conscious disregard for the safety and lives of others, including

Plaintiff, and warrants an award of punitive damages to punish the Defendant, for his egregious

conduct to deter others who would act similarly.

33.    As a direct and proximate result of Defendant's grossly negligent, reckless, and

willful and wanton conduct, or in the alternative, intentional and malicious conduct, Plaintiff was

injured, has been prevented from transacting her business, has suffered and will continue to suffer

pain of body and mind; has incurred and may incur in the future medical and related expenses in

an effort to be cured of said injuries; has incurred lost wages; and has been inconvenienced.

WHEREFORE, the Plaintiff, Christina Turner, demands judgment against the Defendant,

Whitney Daryl Southall, in the sum of Thirty Two Thousand and Five Hundred and 00/100 Dollars

($32,500.00) in compensatory damages plus an award of punitive damages in the amount of Seventeen Thousand and Five Hundred and 00/100 Dollars ($17,500.00), plus award pre-judgment interest from the date of the incident, together with post judgment interest and costs as provided by law.

CHRISTINA TURNER

By: _____
Of Counsel

W. Henry M. Jones (VSB # 89304)
CowanGates
P.O. Box 35655
Richmond, VA 23235
(804) 320-9100 (ph.)
(804) 330-3140 (fax)
hjones@cowangates.com
*Counsel for Plaintiff*

## Certificate of Service

I hereby certify that a true and accurate copy of the foregoing was sent this _9_ day of May, 2024 to the following by regular mail:

Whitney D. Southall
13503 Headwaters Place
Midlothian, VA 23113

Whitney D. Southall
14018 Forest Creek Drive
Midlothian, VA 23113

Whitney D. Southall
4064 Coal Spring Lane, #1A
Glen Allen, VA 23060

Whitney D. Southall
1112 Kenley Way
Richmond, VA 23226

_____
W. Henry M. Jones

6

**EXHIBIT C**

**ORDER IN MISDEMEANOR OR
TRAFFIC INFRACTION PROCEEDING**

Case No. CR23M00507-01

CHESTERFIELD ............................ Circuit Court

**COMMONWEALTH OF VIRGINIA**

v.

WHITNEY DARYL SOUTHALL

1112 KENLEY WAY

RICHMOND, VA. 23226

| | RACE | SEX | BORN | | | HT. | | WGT. | EYES | HAIR |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | MO. | DAY | YR. | FT. | IN. | | | |
| | W | M | 09 | 17 | 1979 | 6 | 01 | 200 | GN | BR |

SSN 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

**COMPLETE DATA BELOW IF KNOWN**

DECEMBER 22, 2022 — OFFENSE DATE          JUNE 9, 2023 — TRIAL DATE

The Defendant was this day [ ] tried in absence [x] present

Attorney: GREGORY R. SHELDON ........................ [ ] Appointed [x] Retained

Original Charge: ASSAULT & BATTERY ON FAMILY MEMBER

Code Section: 18.2-57.2 ............................ [x] State Code [ ] Local Ordinance

Virginia Crime Code: ASL-1315-M1 .................... Offense Tracking Number: 041JM2200043714

**Plea:**

[ ] Not Guilty                 [ ] Consent by Defendant to Waiver of Jury
[x] Guilty as Charged          [ ] Concurrence of Court and Commonwealth's Attorney
[ ] Guilty to Amended Charge   [ ] Plea voluntarily and intelligently entered after defendant was apprised of his right
[ ] Nolo Contendere                against compulsory self-incrimination, right to confront the witnesses against him,
                                   and right to a jury trial.

Charge: ASSAULT & BATTERY ON FAMILY MEMBER

Code Cite: 18.2-57.2 .................... Virginia Crime Code: ASL-1315-M1

**Finding:**

[ ] Not Guilty          [ ] Guilty of ........................
[x] Guilty as Charged   [ ] Plea Agreement Accepted          [ ] Appeal/Withdraw/Affirm   [ ] Appeal not timely filed

[ ] Facts sufficient to find guilt but defer adjudication/disposition to ........................
                                                                              DATE AND TIME

Charge: ASSAULT & BATTERY ON FAMILY MEMBER

Code Cite: 18.2-57.2 .................... Virginia Crime Code: ASL-1315-M1

**Order:**

[ ] Nolle Prosequi [ ] Dismissed [ ] Dismissed with Prejudice [ ] Continued to ........................ [x] COSTS imposed
                                                                          DATE AND TIME

[ ] FINE [ ] CIVIL PENALTY of $ ........................ with $ ........................ suspended

[x] JAIL SENTENCE of 30 DAYS ........ imposed, [ ] of which ...... days mandatory minimum, with ........................ suspended
    for a period of ........................, conditioned upon being of good behavior, keeping the peace, obeying this order and
    for paying fines and costs.
    Credit is allowed pursuant to § 53.1-187 for time spent in confinement.

[x] Serve jail sentence beginning 06/16/2023 ........ [ ] on weekends only

[ ] Work release    [ ] authorized if eligible    [ ] required          [ ] Public work force    [ ] authorized
                    [ ] not authorized                                                            [ ] not authorized

    [ ] on PROBATION for ........................          [ ] VASAP [ ] local community-based probation agency

[ ] DRIVER'S LICENSE suspended for ........................

[ ] Restricted Driver's License per attached order    [ ] Ignition Interlock for ........................

[ ] Attached ORDER FOR RESTITUTION incorporated.

[ ] COMMUNITY SERVICE ........ hours to be completed by ........................ and supervised by ........................
    [ ] to be credited against fines and costs

[ ] Contact prohibited between defendant and victim/victim's family or household members

[ ] Reimburse Commonwealth for investigatory medical fees    [ ] Pay $50 fee to the Court for Trauma Center Fund

[ ] Registration pursuant to Code § 9.1-903 for offenses defined in § 9.1-902 is required.

[ ] Remanded for [ ] CCRE Report [ ] ........................

[ ] Bail on Appeal $ ........................

[x] Other: THE COURT HAS NO OBJECTION TO THE SENTENCING BEING SERVED ON WORK RELEASE OR
          WEEKENDS IF QUALIFIES AND IS SUITABLE.

6/14/23 — DATE                          JUDGE

FORM CC-1392 MASTER 07/19

# EXHIBIT D

1   VIRGINIA:

2     IN THE CIRCUIT COURT OF THE COUNTY OF CHESTERFIELD

3

4   ----------------------------------------------------------

5   COMMONWEALTH OF VIRGINIA

6

7   -vs-                              CASE NO.: CR23M00507-01

8

9   WHITNEY DARYL SOUTHALL

10  ----------------------------------------------------------

11

12          Complete transcript of the hearing in the

13  above matter when heard on June 9, 2023, before the

14  Honorable Edward A. Robbins, Jr., Judge.

15

16

17

18

19

20

21

22

23              CAPITOL REPORTING, LLC
            Registered Professional Reporters
24               Post Office Box 959
             Mechanicsville, VA  23111
25                 (804) 788-4917

```
 1   APPEARANCES

 2

 3   Office of the Commonwealth's Attorney

 4   Mary-Kate Collins, Esquire

 5   P.O. Box 25, Chesterfield, VA 23832

 6   Counsel on behalf of the Commonwealth;

 7

 8   Bain Sheldon, PLC

 9   Gregory Sheldon, Esquire

10   9030 B Three Chopt Road, Richmond, VA 23229

11   Counsel on behalf of the defendant.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          NOTE:  Court is convened; the court

2     reporter having previously been duly sworn, the

3     hearing commences as follows:

4          MS. COLLINS:  Whitney Southall, please.

5          THE COURT:  Mr. Sheldon.  Mr. Southall.

6          NOTE:  The defendant approaches the bar

7     and is accompanied by his attorney.

8          MS. COLLINS:  As Mr. Sheldon and Mr. Southall

9     come up, I wanted to let the Court know I have a

10    video to play.

11         THE COURT:  Okay.  We'll adjust ourselves.

12    Sir, you are Whitney Daryl Southall?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Very well.  It looks like the

15    matter is set for trial.  Okay.  Fifteen minutes.

16         MR. SHELDON:  Judge, you should just have a

17    single warrant for domestic assault and battery.

18         THE COURT:  Indeed.

19         MR. SHELDON:  He is prepared to enter a plea

20    of guilty to that.

21         THE COURT:  I see.  All right.

22         MR. SHELDON:  And I think the Commonwealth has

23    a video with kind of like a summary of the

24    evidence.

25         THE COURT:  Thank you.  All right.


                    Capitol Reporting, LLC
                       (804) 788-4917

1       Mr. Sheldon, your client is before the Court on a

2       charge, as you alluded to, of assault and battery

3       of a family or household member in violation of

4       Virginia § 18.2-57.2, on or about December 22,

5       2022.  Your client's plea, sir?

6               MR. SHELDON:  Judge, guilty.

7           THE COURT:  Mr. Southall, if you will stand,

8       please, to be sworn by the Court.

9               NOTE:  The witness is sworn on his oath.

10          THE COURT:  Very well.  Mr. Southall,

11      Mr. Sheldon has tendered a plea of guilty to a

12      single charge.  Is that what you told him to do?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Before the Court can accept your

15      plea of guilty, I do need to ask you some

16      questions.  If you don't understand any question

17      that I ask, please let me know so I can explain.

18      If you would like to talk to your lawyer at any

19      time during our conversation this morning, feel

20      perfectly free to do so.

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Will you tell me your full legal

23      name, please.

24          THE DEFENDANT:  Whitney Daryl Southall.

25          THE COURT:  How old are you, sir?

1    THE DEFENDANT:  Forty-three years old.

2    THE COURT:  How far did you go in school?

3    THE DEFENDANT:  Bachelor's degree.

4    THE COURT:  All right.  Have you had enough

5    time to talk to Mr. Sheldon about this case?

6    THE DEFENDANT:  I have.

7    THE COURT:  Have you discussed the charge, its

8    elements and defenses to the charge with him to

9    your satisfaction?

10   THE DEFENDANT:  Yes, sir.

11   THE COURT:  After these discussions with your

12   lawyer, sir, did you make the personal decision for

13   yourself to plead guilty?

14   THE DEFENDANT:  Yes, sir.

15   THE COURT:  Are you pleading guilty to the

16   warrant because you are in fact guilty of the

17   offense charged?

18   THE DEFENDANT:  Yes, sir.

19   THE COURT:  Do you understand when you plead

20   guilty you give up your right to a jury trial?

21   THE DEFENDANT:  Yes, sir.

22   THE COURT:  You give up your right to remain

23   silent.

24   THE DEFENDANT:  Yes, sir.

25   THE COURT:  You give up your right to confront

1        and to cross-examine the witnesses against you.

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And you give up your right to

4        appeal all non-jurisdictional claims of error.

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  On the date this offense was

7        committed, sir, were you under any suspended

8        sentence for any other matters?

9              THE DEFENDANT:  No, sir.

10             THE COURT:  Do you have any mental or physical

11       condition that affects your ability to talk to your

12       lawyer?

13             THE DEFENDANT:  I have a mental diagnosis of

14       bipolar.

15             THE COURT:  Does it affect your ability to

16       talk to your lawyer, sir?

17             THE DEFENDANT:  No, sir.

18             THE COURT:  Okay.  Are you under the influence

19       of any drugs or alcohol now, including any drug you

20       might have a prescription for?

21             THE DEFENDANT:  No, sir.

22             THE COURT:  Okay.  Has your lawyer or the

23       Commonwealth's attorney or any other person

24       threatened you or forced you to plead guilty?

25             THE DEFENDANT:  No, sir.

1        THE COURT:  Very well.  Madam Commonwealth, is

2   there a plea agreement?

3        MS. COLLINS:  There is not, Your Honor.

4        THE COURT:  Mr. Sheldon, is that correct?

5        MR. SHELDON:  That's correct.

6        THE COURT:  Mr. Southall, both of the lawyers

7   have told me there is no plea agreement in this

8   case.  Is that correct?

9        THE DEFENDANT:  Yes, sir.

10       THE COURT:  So just to be clear about this,

11  has anyone made any promises to you or agreements

12  with you in exchange for your plea of guilty?

13       THE DEFENDANT:  No, sir.

14       THE COURT:  Sir, the maximum sentence you face

15  if convicted as charged includes confinement for 12

16  months.  Do you understand that if the Court

17  accepts your plea of guilty, the Court could

18  sentence you to the maximum possible penalty?

19       THE DEFENDANT:  Yes, sir.

20       THE COURT:  Are you completely satisfied with

21  the services of your lawyer?

22       THE DEFENDANT:  Yes, sir.

23       THE COURT:  Is there anything you've asked

24  your lawyer to do that he has not done?

25       THE DEFENDANT:  No, sir.


                    Capitol Reporting, LLC
                      (804) 788-4917

1      THE COURT:  Do you have any questions you

2   would like to ask me, Mr. Southall?

3      THE DEFENDANT:  No, sir.

4      THE COURT:  Have you answered all the Court's

5   questions truthfully?

6      THE DEFENDANT:  Yes, sir.

7      THE COURT:  The Court finds that your plea of

8   guilty has been made freely, intelligently and

9   voluntarily with a full understanding of both the

10   nature of the charge and the consequences of your

11   plea and your plea of guilty is accepted.

12      Gentlemen, please be seated.  Just a minute,

13   please.  If you're going to take the time to show

14   it, I need to take the time to see it.

15      Madam Commonwealth, your summary.

16      MS. COLLINS:  Thank you, Your Honor.  Your

17   Honor, on December 22, 2022, law enforcement

18   responded to an address on Headwaters Place here in

19   Chesterfield County.  That's H-E-A-D-W-A-T-E-R-S,

20   one word, Place.

21      They spoke with the victim in this case,

22   Ms. Christina Turner.  She resided at that

23   residence with her boyfriend at the time, Whitney

24   Southall, the defendant.

25      The videos that I'm going to show you are

1    going to give you context to what happened that

2    evening because I don't believe that my proffer

3    will do it justice.  I think, you know, we

4    prosecute a lot of cases of domestic violence and

5    we don't typically have them on video.  This we

6    have on video, so I feel that it's important for

7    the Court as you decide how to sentence

8    Mr. Southall to actually see the offense.

9        I'll tell you there are two different videos.

10   There were multiple videos.  I've shared them all

11   with Mr. Sheldon.  These two videos are going to

12   show -- the first one is going to show a push and

13   the second one is going to show a headbutt and then

14   the parties are going to go inside, at which point

15   had this matter gone to trial, the victim would

16   have said that he jostled her again inside.

17       He had gone in and said, I'm gonna get your

18   dog, so she got up, went inside and she would

19   testify that the dog, her dog was in a crate and he

20   threw the crate across the room with the dog in it,

21   so you'll hear screaming.

22       THE COURT:  Okay.

23       MS. COLLINS:  Then the dog is gonna run out.

24   So that's what I'm gonna show.

25       THE COURT:  Very well.  Do you have this

1    reduced in a form the Court can consider for

2    purposes of the trial record?

3           MS. COLLINS:  I do.

4           THE COURT:  Is it a CD or flash drive?

5           MS. COLLINS:  It's a CD.

6           THE COURT:  All right.  Are you using it on

7    your computer now?

8           MS. COLLINS:  I am.

9           THE COURT:  All right.  When we're done then,

10   we'll mark this as Commonwealth Exhibit 1.

11          Any objection, sir?

12          MR. SHELDON:  No, sir.

13          THE COURT:  Commonwealth 1 is admitted.  You

14   may proceed, ma'am.

15             NOTE:  The item referenced above is

16   marked for identification and received into

17   evidence.

18          MS. COLLINS:  Thank you.  On this CD there are

19   two videos.  I'm gonna play the one called Video

20   first and then the second I'll play is called Video

21   Three.

22          If I could just say for the audience -- sorry.

23   I'll stop this.  If there's anyone in the court who

24   gets triggered by images of domestic violence or

25   verbal assault, this could be triggering, so I just

1    want to let people know in case anyone wants to

2    step out.

3         THE COURT:  Anyone can stay or go as they

4    might wish.  You may proceed, ma'am.

5         MS. COLLINS:  Thank you.

6              NOTE:  Video is played in open court.

7         MS. COLLINS:  Are you able to hear this?

8         THE COURT:  Yes, ma'am.

9         MS. COLLINS:  Okay.  Sorry.  I don't have the

10   ability to edit so I wasn't able to cut that short.

11   I'm going to play video three.  In the primary

12   video, that was the shove in the beginning and this

13   video will be the headbutt and in the beginning

14   you'll hear him saying, Die.

15             NOTE:  Video is played in open court.

16        MS. COLLINS:  That would have been the

17   Commonwealth's evidence had the matter gone to

18   trial.

19        THE COURT:  Thank you.  If you'll pass up

20   Commonwealth Exhibit 1 so the clerk can tag it,

21   please.  Thank you.

22        MS. COLLINS:  Yes, sir.

23        THE COURT:  Mr. Sheldon, do you agree that

24   Commonwealth 1 is the Commonwealth's evidence

25   against your client, sir?

12

1          MR. SHELDON:  Yes.

2          THE COURT:  Do you stipulate and agree that

3     the Commonwealth's evidence is sufficient to

4     convict your client on the charge to which he has

5     pled guilty?

6          MR. SHELDON:  Yes.

7          THE COURT:  Very well.  Mr. Southall, if

8     you'll stand, please, with your lawyer, sir.

9          THE DEFENDANT:  Sorry.  Yes, sir.

10          THE COURT:  If you'll stand, please, with your

11     lawyer.

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Thank you.  Mr. Southall,

14     remembering everything I've discussed with you up

15     to this point, everything your attorney has

16     discussed with you privately and everything you

17     and I together just heard, do you still wish to

18     plead guilty to the warrant, sir?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Very well.  Based upon your plea

21     and the Commonwealth's proffer, the Court finds you

22     guilty as charged.  You may be seated.

23          Criminal history, please.

24          MR. SHELDON:  Judge, I've seen it.

25          THE COURT:  The Court has been handed the

1       defendant's criminal history.  Reflects a DUI in

2       2006 in Henrico and a DUI in 2010 in Henrico and a

3       DWI in 2003 in Amelia, elevated BAC.  That appears

4       to be the entirety of it.

5              Madam Commonwealth, any other evidence on

6       disposition?

7              MS. COLLINS:  No, sir.

8              THE COURT:  Very well.  Mr. Sheldon, evidence

9       on disposition?

10             MR. SHELDON:  Yes, sir.

11             THE COURT:  You may proceed.

12             MR. SHELDON:  Judge, I would just -- and I've

13      shared these with the Commonwealth.  I have a

14      letter -- I'll tell the Court his folks are both

15      here in the back.  Raise your hands.

16             THE COURT:  Thank you both for coming.

17             MR. SHELDON:  His ex-wife is here.  She has

18      written a letter which I have shared with

19      Ms. Collins, as well I have a letter from Glenna

20      Smith, who works at Neuro Psychiatric and

21      Counseling Associates, P.C.  She is a forensic

22      nurse practitioner, just verifying his diagnosis

23      and that he has been in treatment since March with

24      them.

25             THE COURT:  I'll be glad to look at whatever

1       you have.

2               MR. SHELDON:  If I could just hand those up.

3       I'll tell the Court I understand you found him

4       guilty.  It was gonna be my request for the Court

5       to consider doing a deferred judgment under the

6       statute.  I will tell you I can get into argument

7       now.  That would be the evidence that I have on

8       guilt.

9               THE COURT:  Give me one second.  Let me catch

10      up with you.

11              MR. SHELDON:  Yes, sir.

12              THE COURT:  All right.  The letter from Nurse

13      Practitioner Smith indicates that the defendant's

14      been diagnosed with bipolar and has at that

15      writing, June 1st, has met with the treatment

16      provider twice.  The second letter appears to be

17      from Mr. Southall's spouse.

18              MR. SHELDON:  Well, former spouse.

19              THE COURT:  Former spouse.  I just saw that in

20      sentence one.

21              MR. SHELDON:  Yes, sir.  Sorry.

22              THE COURT:  You may proceed, sir.

23              MR. SHELDON:  Yes, sir.  Judge, I think

24      Ms. Collins will agree he is eligible statutorily

25      for deferred judgment.  She objects to it,

                    Capitol Reporting, LLC
                      (804) 788-4917

1    obviously, and I understand her rationale and I'm

2    sure she'll address that.

3         As far as the statute goes, he's an adult at

4    the time, he's pleading guilty, he has no prior

5    like convictions or deferments and he has no prior

6    crimes of violence, so he certainly meets the

7    criteria.  He consents to doing first offender and

8    he understands, obviously, the guilty plea also is

9    a waiver of his appeal, but that is in the statute

10   as well.

11        On that date, Judge, the video certainly shows

12   the altercation.  There is obviously a lot leading

13   up to that, none of which justifies -- and he will

14   tell you at the appropriate time none of which

15   justifies the behavior that you have seen on video.

16        That evening -- I don't believe the police

17   responded that day.  I think they came later.  But

18   she returned to the residence that evening and then

19   continued to text him the next day.

20        He was then served with a warrant the next day

21   and was advised to have no contact.  She continued

22   to text him for about a week after, sending him

23   various messages throughout.  He did not respond to

24   those.

25        Prior to that video, Mr. Southall would tell

Capitol Reporting, LLC
(804) 788-4917

1    you that he had recovered a quantity of cocaine

2    that he believed she had left in his daughter's

3    room that obviously caused him grave concerns.

4    He had been through a very lengthy and protracted

5    custody dispute with the ex-wife that obviously

6    things are vastly improved now, so that is what

7    lead up to this altercation.

8        Again, does not justify anything that happened

9    that evening, but certainly gives some context to

10   what has gone on.

11       He is going to address the Court at the

12   appropriate time, Judge.  I will tell the Court he

13   is deeply remorseful for what he has done.  I would

14   suggest there is not a day that goes by where he

15   does not think about this and think about the

16   choices that he made.

17       You have the letter from Glenna Smith

18   indicating that he has now been diagnosed with

19   bipolar disorder.  Prior to that, he had been

20   diagnosed with anxiety, depression and had been

21   treated and continues to be treated by Dr. William

22   Jennings and Dr. Ileana Asanache, who are

23   psychiatrists who do his medication management and

24   they perform psychiatry with him.

25       He is seeing Glenna Smith.  Additionally, he

17

1      sees Melissa Asbury, who is a licensed professional

2      counselor.  He is seeing her twice weekly.  He

3      forwarded to me yesterday his next meeting is this

4      afternoon with her.  They are working on all manner

5      of issues, but also on anger management through

6      that.

7           He also on his own contacted Frank Manners and

8      Associates to do a domestic violence.  They

9      unfortunately were in a position they could only

10     take a Court referral given the volume of folks

11     that they had, but that was something he reached

12     out in an effort to try to do.

13          He is employed, Judge, at Graco.  He does

14     sales of generators and power systems.  As you see

15     from the letter, he does have an eight-year-old

16     daughter he is very actively involved with.  He

17     obviously has very strong family support.

18          I would submit to the Court that you certainly

19     could find him guilty and impose an appropriate

20     sentence.  The First Offender program, while

21     allowing him to obviously ultimately have the case

22     potentially dismissed or have the case dismissed,

23     would require him to submit to two years of

24     probation at a minimum.  I know the statute does

25     say a minimum of two years.

1    It would require the assessment and we would

2    suggest a domestic violence course.  His continued

3    counseling with a HIPAA waiver to allow pre-trial

4    CCP to access those records, require medication

5    compliance, require no contact and require him to

6    maintain his employment and pay all costs.

7    That will keep him under the guise of the

8    criminal justice system for the next two years.

9    It would allow him to continue the treatment that

10   he has sought.

11   Obviously, he has pled guilty.  He has

12   accepted responsibility for what he has done.

13   Again, he would like to address the Court at the

14   appropriate time.

15   I think the letter from his ex-wife is very

16   telling as far as the progress that he has made and

17   improvements she has seen.  So for all of those

18   reasons we would ask the Court to consider the

19   First Offender and if the Court is not inclined to

20   do that, I know the Commonwealth I don't think is

21   going to ask for a specific amount, but is going to

22   ask the Court to impose a period of incarceration.

23   We would ask for that to be consistent with

24   something he can do on weekends so that he can

25   continue to maintain his employment and like I

Capitol Reporting, LLC
(804) 788-4917

1    said, he'd like to address you at the appropriate

2    time, Judge.

3         THE COURT:  Thank you.

4         MR. SHELDON:  I believe he had written a

5    letter as well to the victim.  He obviously is not

6    allowed to have any contact.  I believe he has

7    written that out.

8         THE DEFENDANT:  I did.

9         MR. SHELDON:  He has it with him.  She's not

10   here so it's not something he can pass on, but I

11   think he would want to pass that on just so he can

12   make those amends.

13        THE COURT:  Very well.  Madam Commonwealth,

14   argument, please.

15        MS. COLLINS:  Your Honor, for those of us who

16   prosecute domestic violence matters multiple times

17   a week, this was an upsetting case because we got

18   to see this one.  We don't normally have video of

19   the way a boyfriend or partner or spouse talks to

20   the person he's abusing.  We don't typically have a

21   video showing the assault, the actual assault and

22   battery.

23        So watching the several videos -- but these

24   are the ones that have the assaults in them -- it

25   was more of a jarring experience than this

1    relatively new domestic violence prosecutor has

2    had.

3        Your Honor, what makes this, aside from the

4    fact that we get to witness this assault, what

5    makes it upsetting and egregious is that it was

6    an unprovoked attack on her.

7        I understand he's made this claim that he

8    found cocaine in the house at the trial downstairs

9    or the hearing downstairs was the first time we

10    heard that.  I don't know whether or not that's

11    true.  Even if it is true, this kind of behavior is

12    not acceptable or appropriate as a response to

13    that.

14        This defendant is, I believe, over six feet

15    tall.  The victim in this case is probably four

16    inches shorter than him.  The first assault that

17    you see is a shove as he's yelling at her.  That's

18    on the first video.

19        On the second video, he's screaming.  He's in

20    her face screaming, die, die, and then he headbutts

21    her and you hear her scream, she falls to the

22    ground.

23        Had she come to testify, had we needed her to

24    testify, which she would have been here had we

25    needed her to; she has been fully cooperative with

21

1    the prosecution the entire time. She would have

2    talked to the Court about the fact that she

3    required physical therapy for some number of weeks

4    after this incident for lasting effects of this

5    headbutt.

6         After he headbutted her and she fell to the

7    ground crying, he walked away and then he came

8    back, bent over her and screamed at her, I hate

9    you, I hate you.  It's adding insult to injury,

10   literally adding insult to injury.  And not just

11   walking away saying I hate you, which is bad

12   enough, but standing over her and screaming at her,

13   I hate you, while she's lying on the ground with a

14   concussion saying, What have I done?  What have I

15   done to you?

16        Then he walks away and says, I'm gonna go get

17   your dog.  So she gets up off the ground and runs

18   into the house to protect her dog.  You hear the

19   screaming inside where he's throwing her dog across

20   the room in a crate, according to her.  We don't

21   have that on video.  And the dog ends up getting

22   out and then she gets out, collects her dog and

23   says, I'm so sorry to her dog and leaves.

24        This is one night.  It's not videos from

25   multiple nights.  I do concede that.  But this is a

1    situation that is so mean and aggressive and

2    violent and unnecessary and unprovoked that an

3    under advisement is not appropriate in this case.

4        I do concede that he pled guilty downstairs

5    and he's pleading guilty today, so he is -- this

6    isn't even a no contest plea.  He is pleading

7    guilty.  He is taking responsibility for what he

8    did, but Your Honor, an assault like this on your

9    trusted partner with whom you live warrants active

10   jail time.

11       This is not the kind of assault that warrants

12   an under advisement.  This is the kind of assault

13   where he's gonna need to think about what he did

14   and an under advisement I don't think is adequate.

15   I don't think it's proper for general deterrence.

16   I don't think it's proper for specific deterrence

17   for him.

18       I would ask the Court that any sentence you do

19   impose would include the domestic violence class,

20   supervised probation and the domestic violence

21   class.  I would ask that any sentence you impose

22   include, as Mr. Sheldon suggested, continued

23   counseling, medication compliance, no contact.

24       So with all of those suggestions that

25   Mr. Sheldon made to the Court, I fully agree with

Capitol Reporting, LLC
(804) 788-4917

1    those and I believe this requires a guilty finding

2    and active jail time, so that's what the

3    Commonwealth is asking.

4        I will tell the Court I've spoken with the

5    victim as recently as this morning.  She is working

6    and is not here.  Had we needed her to come to

7    testify, she absolutely would have been here.

8        This was a traumatic experience for her,

9    obviously.  I never supported an idea of having

10   an under advisement and First Offender.  That was

11   never something I thought was appropriate and I

12   told her that from the very beginning and she

13   agreed with me.

14       So we're asking the Court not to -- even

15   though he is eligible for First Offender, we're

16   asking the Court for a guilty finding and to

17   sentence him to active jail time.  I will submit to

18   the Court on the amount.  Thank you.

19       THE COURT:  Thank you.  The Court has

20   considered and now at the request of counsel has

21   reconsidered whether or not this defendant is

22   suitable for First Offender under Virginia §

23   18.2-57.3.  One of the difficulties but certainly

24   not the only one is that the defendant is not a

25   first offender, he's a fourth offender.  The first

24

1    three were DWIs.  So although it's not a statutory

2    bar to anything, given the nature of the assault

3    and his behavior in the prior record as indicated

4    or reflected in the criminal history handed up, the

5    Court finds the defendant is not suitable for First

6    Offender and the Court declines to order it.

7         Having found the defendant guilty and having

8    considered the evidence and comment of counsel with

9    regard to disposition, we are now ready for

10   allocution.

11        Mr. Southall, if you'll stand, please, with

12   your lawyer, sir.  Mr. Southall, is there anything

13   you would like to say before the Court fixes

14   sentence?

15        THE DEFENDANT:  Yes, sir.

16        THE COURT:  You may proceed.

17        THE DEFENDANT:  Do you want me to sit down or

18   stand?

19        THE COURT:  Whichever you might wish.

20        THE DEFENDANT:  I'd like to address -- and

21   thank you for your time today.  I'd like to address

22   that video.  It's tough to watch.  It is.  I'm very

23   remorseful and there hasn't been a day that's gone

24   by that I haven't thought about this and what

25   transpired and regardless of the things that

25

1   happened prior to this, I shouldn't have taken it

2   out on someone else.  I shouldn't have taken out --

3   I shouldn't have laid my hands on someone,

4   especially her.  I'm sorry for that.  I really am.

5   I'm very remorseful.  I have been.

6        Had I had the opportunity to speak with her

7   directly, I would.  That being said, I was

8   diagnosed with bipolar and manic mania, as

9   Dr. Smith said.  I've been seeing her since March

10   at the opportunity of being to her availability

11   and also doing telehealth with her as well as Dr.

12   Asbury and Dr. Asanache, as well as going to Tucker

13   psychiatric with Dr. William James.

14        That's been remarkably better for me with my

15   diagnosis, with my depression, with my anxiety.

16   The medicine, Latuda, Perifinol [ph] and Busiprone,

17   it has been night and day.

18        And again, none of this excuses what I did.  I

19   take full responsibility for the actions that I did

20   with Ms. Turner, but the continued treatment that

21   I've had with them has been dramatically better for

22   me and I'm grateful for it.  I am.

23        This instance, while it's very dark and it was

24   a dark time for me, I'm happy that at least it

25   showed me a light at the end of the tunnel so I

1     knew to address issues that I had, because

2     otherwise, I might not have gone to or seaked the

3     treatment for bipolar, as opposed to staying

4     depressed and things like that.

5         So that has been a huge, you know, impact on

6     my life.  I'll continue to reiterate that there's

7     no excuse for my actions for what I did.  I have

8     an eight-year-old daughter and it upsets me greatly

9     to think she might ever have to face someone like

10    this or something like this at this time.

11        I have a very deep emotional connection with

12    her.  I help take care of her monetarily through my

13    work, so what I'd like if it's okay is, while I

14    know there's probably going to be jail time,

15    obviously, or a sentence, is that I can continue to

16    work and be able to take care of my daughter and

17    keep that connection with her and continue to learn

18    from this experience through my therapy, like I

19    said, with Frank Manners as soon as I was able to

20    get through this, then I would be able to go see

21    them as well.

22        Again, thank you for your time today, sir.

23        THE COURT:  Thank you, sir.  Mr. Southall, my

24    time starts at six p.m. tonight.  Today, now, is

25    your time and everybody else in this room.  I am a

```
 1        public servant.  Your tax dollars pay my salary and
 2        keep the lights on.  This is my job.  It's what I
 3        asked to do.  It is not offensive to me at all that
 4        you're here because that's why I'm supposed to be
 5        here.  It's not my time.  My time starts at six.
 6        So no apology necessary.
 7            Mr. Southall, the Court has been asked to
 8        consider a partially suspended sentence and placing
 9        you on probation or even a fully suspended sentence
10        and placing you on probation.  The difficulty with
11        that I think becomes evident when I start to
12        explain how this unfolds.
13            The Court of Appeals, I think at 1999, I'm not
14        certain, but it was Hartless versus Commonwealth at
15        29 Va. App. 172 that I have in mind.  I might be
16        wrong about that, but if it's not that, there's
17        another case and the question before the Court of
18        Appeals is can you be on probation without a
19        suspended sentence.  You know this is lawyer
20        geekdom.  That's what I do.
21            The Court of Appeals said you really can't be
22        on probation without a suspended sentence because a
23        suspended sentence without teeth is worthless and
24        probation without jail behind it is nothing more
25        than an exercise in professional begging.  My
```

1    words, not them.

2         So if the Court places you on probation and

3    you perform any number of problems while on

4    probation, the Court is duty bound to comply with

5    the statute that says I can't impose any time.

6         So you don't go see Mr. Manners, it's a

7    technical violation.  Zero.  If you have contact,

8    it's a technical violation.  Zero.  If you don't go

9    to your treatment, it's a technical violation.

10   Zero.

11        So putting you on probation does not have an

12   enforcement mechanism behind it except to come to

13   court to send you out the door in the exact same

14   position you came in.  It's circular.

15        So for the reasons that the Court of Appeals

16   enunciated in the Hartless case or whatever case it

17   is far more eloquently than I, probation without a

18   suspended sentence where you can actually impose

19   the time isn't the probation that's going to

20   produce a behavior change because there's literally

21   nothing the Court can do in the face of most any

22   violation at least twice.

23        In terms of your recovery from your situation

24   and in terms of your victim having any sense of

25   accountability and safety in terms of general

1   deterrence to others similarly situated, it makes

2   things worse.

3       So for those reasons the Court is not going to

4   impose a probationary sentence with a suspended

5   sentence behind it.  It just doesn't help.  It's

6   not going to do what you argue it will do, which is

7   do this and if you don't do this on risk of having

8   additional confinement.  There is no risk.  If it's

9   a technical violation it's zero.  It just is.

10      The Court has looked at the video.  The nature

11  of the evidence presented does not change the

12  nature of the criminal conduct alleged.  We have a

13  video but that doesn't mean in any case where

14  there's no video that somehow the criminal conduct

15  differs.  It doesn't.  As a sentencing authority

16  the Court cannot impose a sentence based upon

17  emotion.  We don't do vigil-anti justice.  That's

18  not the American and Virginia way.

19      So I saw the same video you all saw.  It's gut

20  wrenching.  The Court has to sentence the defendant

21  for what he did, not for how we feel.

22      There is this erroneous thought process that

23  somehow domestic violence is the junior step-child

24  of blue collar assault.  I think the fact that

25  every law enforcement officer who has ever been

1    killed in Chesterfield in my judicial career was

2    responding to a domestic violence call pretty much

3    answers the question that domestic violence is at

4    least on the same footing as any other violence.

5    At least, and arguably, perhaps intelligently so

6    domestic violence is worse because you know your

7    victim and you're betraying your trust.

8        This assaultive behavior was utterly

9    unprovoked.  The complaining witness, now victim,

10   never flinched.  She never pick up her hand, she

11   never made a threat.  It was utterly and completely

12   unprovoked.

13       The first assault, push, okay maybe the

14   argument got heated.  That might be something that

15   the Court should take a look at in terms of zero.

16   But then it was followed up after leaving the scene

17   for at least a moment or two and then coming back

18   and headbutting her.

19       At that point it was just putting gasoline on

20   an already burning fire and that I think is the

21   criminal conduct that merits confinement.

22       How much confinement?  It is a first offense

23   for domestic violence.  The defendant has pled

24   guilty twice.  Steps have been taken to address his

25   medical situation and apparently alcohol issues as

1    reflected in the criminal history.

2         He accepts responsibility through his guilty

3    plea.  He accepts responsibility through his

4    allocution.  Frankly, Mr. Southall is more than

5    aware and has demonstrated so in every way that he

6    possibly can that he recognizes the wrongfulness of

7    his conduct and the Court trusts that he will

8    endeavor to never ever do such a thing again.

9         So it really comes down to considerations

10   other than rehabilitation.  Mr. Southall, I

11   recognize that as I sit here every day, that most

12   decisions this Court makes are disagreed with by

13   most.  At least half the people leave here mad and

14   oftentimes all of them, but somebody's got to make

15   the decision and that's the responsibility that the

16   Court signed up for.

17        I've explained the Court's reasoning in the

18   hope that you recognize that I'm not up here

19   flipping a coin or spinning a wheel of fortune.

20   I put some thought in this and those are the

21   considerations that the Court has in mind in

22   deciding what's an appropriate sentence in your

23   case.

24        In this matter, sir, the Court orders that you

25   be confined for a period of 30 days.  The Sheriff

 1    will take your fingerprints and photograph for

 2    submission to the Central Criminal Records Exchange

 3    if they have not previously been provided for each

 4    offense as required by law.  The Sheriff will take

 5    a sample of your DNA for the state's DNA database

 6    if one has not previously been provided.

 7         The Court has no objection to your

 8    participation in Work Release or weekends if the

 9    Sheriff determines that you both qualify and are

10    suitable.  You will of course receive credit for

11    all time served while awaiting trial.

12         Madam Commonwealth, anything else, ma'am?

13         MS. COLLINS:  I guess the no contact is only

14    for then 30 days?

15         THE COURT:  There's no contact order because

16    there's no suspended sentence because if he

17    contacts her we're still back at square one.

18         MS. COLLINS:  Thank you.

19         THE COURT:  All right.  Mr. Sheldon, anything

20    else?

21         MR. SHELDON:  Can he report next Friday so he

22    can get the stuff straight with the --

23         THE COURT:  The Sheriff will be glad to help

24    you with that.

25         Madam Clerk, anything else?


                    Capitol Reporting, LLC
                     (804) 788-4917

1          THE CLERK:  No, Judge.

2          THE COURT:  All right.  Sir, if you'll wait

3     right there, the Sheriff is going to give you some

4     paperwork about reporting and after that you can

5     step out.

6          MR. SHELDON:  Thank you.

7          THE COURT:  Thank you.  Good to see you, Mr.

8     Sheldon, as always.

9          NOTE:  The hearing is concluded and the

10    defendant exits the courtroom with his attorney.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               CERTIFICATE OF COURT REPORTER

2

3          I, Sandra G. Spinner, hereby certify that I,

4    having been duly sworn, was the court reporter in the

5    Circuit Court of the County of Chesterfield, on June 9,

6    2023, at the time of the hearing herein.

7          I further certify that the foregoing

8    transcript is, to the best of my ability, a true,

9    accurate and full record of the incidents of the hearing

10   herein.

11         Given under my hand this 21st day of June,

12   2023.

13

14

15   _Sandra G. Spinner_____

16   Sandra G. Spinner
     Court Reporter

17

18

19

20

21

22

23

24

25


                        Capitol Reporting, LLC
                          (804) 788-4917